# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

UNITED STATES OF AMERICA,

      Plaintiff,  :  Case No. 1:15-cr-119

              District Judge Susan J. Dlott
 - vs -            Magistrate Judge Michael R. Merz

DAYMOND WILLIAMS,

      Defendant.  :

## REPORT AND RECOMMENDATIONS

  This is an action pursuant to 28 U.S.C. § 2255 in which Defendant Daymond Williams, proceeding pro se, seeks relief from his conviction sentence in this Court for conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine.

  The record reflects that Williams was indicted with seven others on November 18, 2015 (ECF No. 12). On April 12, 2016, he agreed to plead guilty to the offense of conviction and actually did so on May 4, 2016 (Transcript, ECF No. 244). The case was then referred to the United States Probation Department which prepared a Presentence Investigation Report ("PSR"). After reviewing the PSR and the sentencing memoranda of the parties, Judge Dlott sentenced Williams to 108 months imprisonment on March 16, 2017, a sentence at the bottom of the advisory Sentencing Guidelines (Transcript, ECF No. 245).

Williams then appealed to the Sixth Circuit which dismissed his appeal as barred by the appeal waiver in his Plea Agreement. *United States v. Williams*, Case No. 17-3325 (6th Cir. Oct. 12, 2017)(unreported; copy at ECF No. 251). The instant Motion under § 2255 followed.

Williams pleads one ground for relief.

> **Ground One:** Ineffective assistance of counsel at sentencing – failure to object to aggravating role enhancement under USSG Section 3B1.1(b).
>
> **Supporting Facts:** The probation officer in this case recommended a 4-level aggravating role enhancement to my United States Sentencing Guidelines ("USSG") offense level pursuant to USSG Section 3B1.1 (a), for being an organizer/leader of a criminal activity that involved five or more participants or was otherwise extensive. At sentencing, the court instead applied a 3-level aggravating role enhancement pursuant to USSG Section 3B1.1 (b), for being a manager or supervisor of a criminal activity that involved five or more participants or was otherwise extensive. My attorney provided me with ineffective assistance of counsel at sentencing, because he failed to object to the application of this enhancement. I was prejudiced by his deficient performance, because if he had properly objected and argued this issue, my guidelines range would have been lower, and there is a reasonable probability that I would have received a shorter sentence.
>
> Pursuant to USSG Section 3B1.1 (b), a defendant's offense level is increased by three levels if he "was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive." To qualify for an enhancement under either Sections 3B1.1 (a) or 3B1.1(b), a defendant must have managed or supervised "one or more participants," and not merely the criminal scheme. See USSG Section 3B1.1, cmt. 2; see also *United States v. Gort-DiDonato*, 109 F.3d 318, 321 (6th Cir. 1997). The United States Court of Appeals for the Sixth Circuit has "repeatedly held that in general, a defendant must have exerted control over at least one individual within a criminal organization for the enhancement of Section 381 .1 to be warranted." *United States v. Salyers*, 592 Fed. Appx. 483, 485 (6th Cir. 2015) (internal quotations and citations omitted). The Sixth

2

Circuit "derive[s] this 'control' requirement from the commentary to Section 3B1.1, which lays out factors for sentencing courts to consider when applying the enhancement. These factors are: 'the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.'" *Id.*

Although there were five or more "participants" in the criminal activity I was involved in, I did not exert control over any of them. Rather, I simply purchased cocaine from one individual, then resold it to several others. Just as the defendant in *Salyers*, to the extent that my customers resold the drugs I supplied, I had no say in that level of distribution. I did not recruit others to sell drugs for me, nor did I issue orders to any of my customers. I only "sold drugs to multiple individuals. [I] had no control over what they did with the drugs after the purchases." *United States v. Swanberg*, 370 F.3d 622, 629 (6th Cir. 2004).

At sentencing, the "court made none of the factual findings typical of [the Sixth Circuit's] Section 3B1.1 adjustment cases." *United States v. Christian*, 804 F.3d 819, 825 (6th Cir. 2015). The factual findings in the presentence report ("PSR") were adopted as the court's finding of fact. See Sentencing Transcript, pg. 3-4. However, the PSR's allegations regarding the application of a Section 3B1.1 enhancement, as well as my supposed "control" of participants, are vague and conclusory. For example, the PSR alleges that I "provided drugs to and controlled the activities of other individuals within the conspiracy." However, no detail is given over what activities of the other individuals I controlled, or how I controlled them. The PSR goes on to allege that "five street level dealers were identified as being orchestrated and supplied by Daymond Williams." PSR Paragraph 28. No detail is given on how exactly I "orchestrated" these individuals. Instead, the rest of the PSR merely details the fact that I sold cocaine to these individuals, which they then re-sold. The PSR further alleges that "Daymond Williams controlled the flow of cocaine to his distributors and organized the conspiracy. Therefore, he is due a leadership adjustment." PSR Paragraph 43. In the

paragraphs specifically dealing with the adjustment under Section 3B1.1, the PSR alleges the following: "Adjustment for Role in the Offense: The defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive; therefore, 4 levels are added. U.S.S.G. Section 3B1.1(a). Williams received orders from individuals and then would deliver large amounts of cocaine to his customers. Some of Williams' customers such as Jordan, Jones and Ratliff would then further distribute the cocaine to their customers. Williams controlled the flow of cocaine to others and organized the conspiracy. There are a total of seven individuals involved in this conspiracy not counting Williams. Of these seven individuals, Williams provided drugs to five of seven. Therefore, Williams is considered a leader and four levels are appropriately added." PSR Paragraphs 54-55.

It appears that the probation officer relied on irrelevant factors to determine that I should receive an enhancement under Section 381.1. For example, it appears that she relied on the fact that I sold drugs to five of seven individuals in the conspiracy. While this may show that I played an essential role in the conspiracy, the Sixth Circuit has explained that "merely playing an essential role in the offense is not equivalent to exercising ... control over other participants," which is what is required to impose an enhancement under Section 3B1.1. *United States v. Wright*, 747 F.3d 399, 412 (6th Cir. 2014) (citation omitted). It also appears that the probation officer relied on the fact that I "controlled the flow of cocaine to others." However, any seller can be considered to "control the flow" of whatever product they are selling. This does not mean that every seller controls his CUSTOMERS. Also, cocaine is not a participant, but is merely property. A court cannot base an adjustment on the control of property alone. See *Christian*, 804 F.3d at 824; *United States v. Castilla-Lugo*, 699 F.3d 454, 460 (6th Cir. 2012). Furthermore, although the probation officer alleged that I "organized the conspiracy," she did not explain how exactly I did so.

In conclusion, the manager/supervisor role enhancement was improperly applied, and my attorney provided me with constitutionally ineffective assistance of counsel at sentencing when he failed to object. An appropriate remedy would be to schedule a

>   new sentencing hearing, at which my guidelines are re-calculated
>   without the application of the enhancement.

(Motion, ECF No. 257, PageID 846 & 855).

The governing standard for ineffective assistance of trial counsel was adopted by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687. In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice. *Berghuis v. Thompkins,* 560 U.S. 370, 389 (2010), *citing Knowles v. Mirzayance,* 556 U.S.111 (2009).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

5

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694. *See also Darden v. Wainwright*, 477 U.S. 168 (1986); *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998); *Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987). *See generally* Annotation, 26 ALR Fed 218.

Williams' Motion does not expressly set forth any way in which his attorney's performance was deficient or prejudiced Williams' situation. Instead, he cites Sixth Circuit case law which he believes shows he should not have been subjected to an enhancement for a managerial role and suggests by inference that if his attorney had cited that authority, it would have persuaded Judge Dlott not to adopt the conclusions in the PSR.

In the Sentencing Memorandum he filed on Williams' behalf, his attorney, Timothy McKenna, acknowledged without dispute the recommended three point enhancement for a managerial role (ECF No. 198, PageID 461-62). During the sentencing hearing, McKenna did not dispute any of the facts in the PSR (Transcript, ECF No. 245, PageID 678). Judge Dlott then adopted the factual statements in the PSR as findings of fact. *Id.* Likewise there were no objections to the proposed Guideline application in the PSR. *Id.* at PageID 679. Judge Dlott expressly found that the three points should be added for a managerial or supervisory role and calculated the Guideline Range at 108 to 135 months. *Id.* at PageID 680. Applying the required factors in 18 U.S.C. § 3553(a), Judge Dlott found

> Mr. Williams was a leader in the conspiracy [to distribute large amounts of cocaine in the Cincinnati area] as he was the sole individual who provided drugs to and controlled the activities of other individuals within the conspiracy. He also participated in controlled buys in which a criminal source working with agents had

> purchased drugs from Mr. Williams. Mr. Williams also maintained
> a premises throughout the conspiracy in which he stored drugs.

*Id.* at PageID 681-82. In his allocution, Williams said nothing to diminish his role in the conspiracy. *Id.* at PageID 689-90. In sentencing Williams, Judge Dlott noted that he had never had employment other than selling drugs, which could have but did not add two points to the offense level calculation, and "your livelihood was being almost at the top of a pyramid distributing cocaine to countless people who ended up with it and who had lots of problems as a result of it." *Id.* at PageID 693.

Marshall cites a number of Sixth Circuit cases in support of his claim. In *United States v. Gort-Didonato*, 109 F.3d 318 (6th Cir. 1997), the defendant had been convicted of wire fraud. Her Guideline offense range was enhanced by two levels for being "an organizer, leader, manager, or supervisor of a criminal activity consisting of at least one participant but fewer than five participants." *Id.* at 319. The court noted a new Application Note 2 of the Commentary to § 3B1.1 which provides:

> To qualify for an adjustment under this section, the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants. An upward departure may be warranted, however, in the case of a defendant who did not organize, lead, manage, or supervise another participant, but who nevertheless exercised management responsibility over the property, assets, or activities of a criminal organization.

*Id.* at 321. Gort-Didonato collaborated with her boyfriend in bilking her family of a large amount of money. The Sixth Circuit did not say that she could not have been found to be a manager, but merely that the district court "neither addressed Application Note 2 nor made a finding of fact as to whether defendant engaged in a supervisory, leadership, organizational, or managerial role over another participant in the scheme to defraud her parents." *Id.* at 323.

In *United States v. Salyers*, 592 Fed. Appx. 483 (6th Cir. 2015), the district court had imposed a four-level enhancement for leadership under § 3B1.1(a), rather than the three levels Williams received under § 3B1.1(b) for being a manager. Although defendant both bought heroin and sold it to others, "the evidence does not demonstrate that defendant exercised control over any other participant. Rather, it shows that defendant purchased heroin in Cincinnati, travelled back to Kentucky, and distributed it to others." *Id.* at 485.

In *United States v. Swanberg*, 370 F.3d 622 (6th Cir. 2004), defendant Tuimala received a leadership role enhancement which the circuit court reversed, holding

> This court has held that a sentence enhancement is appropriate under § 3B1.1 where a defendant has "exerted control over at least one individual within a criminal organization," but not where the defendant has "merely exercised control over the property, assets or activities of the enterprise." *United States v. Gort-DiDonato*, 109 F.3d 318, 321 (6th Cir. 1997). In the present case, the record at most demonstrates only that Tuimala sold drugs to multiple individuals. He had no control over what they did with the drugs after the purchases.

*Id.* at 629.

In *United States v. Christian*, 804 F.3d 819, 825 (6th Cir. 2015), the court held that to be eligible for the managerial enhancement, the defendant must be shown to have had control over other participants, not just the property involved.

In *United States v. Wright*, 747 F.3d 399 (6th Cir. 2014), the court upheld application of the leadership enhancement to a person who had recruited others to join a terrorist conspiracy to blow up a highway bridge.

Because this case was not tried and no evidence was presented by either side at the sentencing hearing, the Court does not know what other evidence either side might have had on the managerial role enhancement and Williams does not now suggest any additional evidence that

McKenna could have presented on the issue. Thus we know Williams bought drugs in large quantities and sold re-distributable quantities (not personal use quantities) to a number of drug dealers on a number of occasions. Did Williams recruit these other dealers or did they seek him out? Did he direct in which territories they were to re-sell, so as to prevent turf wars among them, or did he leave them free to sell wherever they wanted? Did he control their re-sale price or allow the market to set the price? Did he stand behind his product, ensuring a certain level of quality? None of these facts are in the record and Williams does not suggest what they would be if they were added to the record.

Instead, Williams relies on the facts in the cited decisions. But none of those decisions was issued on a claim of ineffective assistance of trial counsel on a § 2255 motion. Instead, all were issued on direct appeal after a district court had made findings of fact based on adversarial presentations of evidence relevant to the managerial role enhancement[1]. The facts of record here show that Williams made his living as a drug dealer and maintained a premises from which the drugs were distributed. He was not at the top of the hierarchy, but he was near the top as Judge Dlott found.

The factual portion of the PSR contains substantial facts showing far more than the transactions as Williams characterizes them, to wit, I bought drugs from some people and I sold them to others. They include Williams' (1) use of different telephones to keep family, girlfriend, and drug transactions separate; (2) use of a code to refer to the quantity of drugs to be bought or sold; (3) frequent change of rental cars to avoid detection by law enforcement; (4) maintenance of separate residences; (5) regular and repeated distribution to street-level dealers Jordan, Ratliff, Pruett, Thorne, and Jones.

---

[1] The trial records in those cases are not before this Court, but the issue could not have been presented to the appeals court without having been preserved in the trial court.

Williams does not now dispute any of these facts. Taken together, they show far more to support a managerial role than the facts in the cited cases. And Williams cites no other facts which McKenna could have presented to undercut these damaging ones.

Williams might have had an arguable claim on direct appeal, based on his "I just bought and sold" theory. Of course, he validly waived his right to appeal. But a claim of ineffective assistance of trial counsel is not a substitute for appeal. Williams presents no precedent in which an attorney was found to have performed deficiently by not claiming, on facts such as those of record here, that a managerial enhancement was not warranted. Mr. McKenna chose a different strategy to obtain a below-Guidelines sentence – emphasizing that Williams housed and cared for his ailing grandmother (ECF No. 198, PageID 459, 460-64)[2].

Counsel's tactical decisions are particularly difficult to attack. *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). Indeed, strategic choices by defense counsel are "virtually unchallengeable." *Buell v. Mitchell,* 274 F.3d 337, 359 (6th Cir. 2001), *quoting Meeks v. Bergen*, 749 F.2d 322, 328 (6th Cir. 1984). Given the facts of record, Mr. McKenna's choice in presenting the sentencing decision has not been shown to be deficient performance.

Moreover, Williams has not shown he was prejudiced by McKenna's choice. He has not shown any additional facts to detract from the managerial assessment that McKenna could have presented. Judge Dlott found a managerial role enhancement was warranted on those facts. Williams has not shown circuit court precedent on which those facts would not have been enough for the enhancement. Moreover, even to get a chance to present those facts to the appellate court,

---

[2] Emphasis on the grandmother, who told Pretrial Services that Williams was an "excellent" father, may have been intended to distract from the fact that his four children were all by different mothers and he did not consistently pay child support.

10

Williams would have bene forced to negotiate a plea agreement that did not contain an appellate waiver.

**Conclusion**

Williams has not shown he received ineffective assistance of trial counsel and his § 2255 Motion should therefore be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

March 5, 2018.

s/ *Michael R. Merz*<br>United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by mail. .Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).