IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI

UNITED STATES OF AMERICA,

      Plaintiff,  :  Case No. 1:15-cr-119

              District Judge Susan J. Dlott
 - vs -           Magistrate Judge Michael R. Merz

DAYMOND WILLIAMS,

      Defendant.  :

**REPORT AND RECOMMENDATIONS**

This is an action pursuant to 28 U.S.C. § 2255, originally brought *pro se* by Defendant (ECF No. 257), but litigated since shortly after filing with the assistance of appointed counsel, Attorney Lawrence Greger (ECF No. 263).

An evidentiary hearing was held March 1, 2019, and has been transcribed (ECF No. 302). The parties have filed post-hearing briefs (ECF No. 303, 304, & 305) and the Motion to Vacate is ripe for decision.

**Litigation History**

On November 18, 2015, the grand jury for this District indicted Williams and seven others on one count of conspiring to distribute and possess with intent to distribute in excess of five

kilograms of cocaine (Indictment, ECF No. 12, PageID 25). Magistrate Judge Stephanie K. Bowman appointed attorney Timothy McKenna to represent Williams the same day as the Indictment was filed (ECF No. 29). On April 5, 2016, Williams and McKenna signed a Plea Agreement, later executed by Assistant United States Attorney Karl Kadon (ECF No. 133, PageID 335). Under the agreement, Williams would plead guilty to Count One of the Indictment with a statutory penalty range of five to forty years[1]. *Id.* at PageID 327. The Agreement contains a waiver of appeal with certain exceptions and a standard integration clause. *Id*. at PageID 334-35, After the required Fed.R.Crim.P. 11 colloquy, Judge Dlott accepted Williams' guilty plea pursuant to the Agreement (Plea Transcript, ECF No. 244).

On March 23, 2017, after considering the results of a pre-sentence investigation by the Probation Department, Judge Dlott sentenced Williams to 108 months imprisonment, a sentence at the bottom of the calculated Guideline range (Judgment, ECF No. 225, PageID 571). Williams appealed (Notice of Appeal, ECF No. 231), but the appeal was dismissed based on the appeal waiver. *United States v. Williams*, No. 17-3325, 2017 U.S. App. LEXIS 20006 (6th Cir. Oct. 12, 2017). Thereafter Williams timely filed the instant Motion to Vacate (ECF No. 257). He pleads the following ground for relief:

> **Ground One:** Ineffective Assistance of Counsel at sentencing – failure to object to aggravating role enhancement under USSG Section 3B1.1(b).
>
> **Supporting Facts:** The probation officer in this case recommended a 4-level aggravating role enhancement to my United States Sentencing Guidelines ("USSG") offense level pursuant to USSG Section 3B1.1 (a), for being an organizer/leader of a criminal activity that involved five or more participants or was otherwise extensive. At sentencing, the court instead applied a 3-level

---

[1] As indicted, this offense carried a penalty of ten years to life. The Plea Agreement provided for reduction of the amount of cocaine involved from five kilograms to 500 grams.

aggravating role enhancement pursuant to USSG Section 3B1.1 (b), for being a manager or supervisor of a criminal activity that involved five or more participants or was otherwise extensive. My attorney provided me with ineffective assistance of counsel at sentencing, because he failed to object to the application of this enhancement. I was prejudiced by his deficient performance, because if he had properly objected and argued this issue, my guidelines range would have been lower, and there is a reasonable probability that I would have received a shorter sentence. . . .

Pursuant to USSG Section 3B1.1 (b), a defendant's offense level is increased by three levels if he "was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive." To qualify for an enhancement under either Sections 3B1.1 (a) or 3B1.1(b), a defendant must have managed or supervised "one or more participants," and not merely the criminal scheme. See USSG Section 3B1.1, cmt. 2; see also *United States v. Gort-DiDonato*, 109 F.3d 318, 321 (6th Cir. 1997). The United States Court of Appeals for the Sixth Circuit has "repeatedly held that in general, a defendant must have exerted control over at least one individual within a criminal organization for the enhancement of Section 381.1 to be warranted." *United States v. Salyers*, 592 Fed. Appx. 483, 485 (6th Cir. 2015) (internal quotations and citations omitted). The Sixth Circuit "derive[s] this 'control' requirement from the commentary to Section 3B1.1, which lays out factors for sentencing courts to consider when applying the enhancement. These factors are: 'the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.'" *Id*.

Although there were five or more "participants" in the criminal activity I was involved in, I did not exert control over any of them. Rather, I simply purchased cocaine from one individual, then resold it to several others. Just as the defendant in *Salyers*, to the extent that my customers resold the drugs I supplied, I had no say in that level of distribution. I did not recruit others to sell drugs for me, nor did I

issue orders to any of my customers. I only "sold drugs to multiple individuals. [I] had no control over what they did with the drugs after the purchases." *United States v. Swanberg,* 370 F.3d 622, 629 (6th Cir. 2004) [(alteration in original)].

At sentencing, the "court made none of the factual findings typical of [the Sixth Circuit's] Section 3B1.1 adjustment cases." *United States v. Christian*, 804 F.3d 819, 825 (6th Cir. 2015). The factual findings in the presentence report ("PSR") were adopted as the court's finding of fact. See Sentencing Transcript, pg. 3-4. However, the PSR's allegations regarding the application of a Section 3B1.1 enhancement, as well as my supposed "control" of participants, are vague and conclusory. For example, the PSR alleges that I "provided drugs to and controlled the activities of other individuals within the conspiracy." However, no detail is given over what activities of the other individuals I controlled, or how I controlled them. The PSR goes on to allege that "five street level dealers were identified as being orchestrated and supplied by Daymond Williams." PSR Paragraph 28. No detail is given on how exactly I "orchestrated" these individuals. Instead, the rest of the PSR merely details the fact that I sold cocaine to these individuals, which they then re-sold. The PSR further alleges that "Daymond Williams controlled the flow of cocaine to his distributors and organized the conspiracy. Therefore, he is due a leadership adjustment." PSR Paragraph 43. In the paragraphs specifically dealing with the adjustment under Section 3B1.1, the PSR alleges the following: "Adjustment for Role in the Offense: The defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive; therefore, 4 levels are added. U.S.S.G. Section 3B1.1(a). Williams received orders from individuals and then would deliver large amounts of cocaine to his customers. Some of Williams' customers such as Jordan, Jones and Ratliff would then further distribute the cocaine to their customers. Williams controlled the flow of cocaine to others and organized the conspiracy. There are a total of seven individuals involved in this conspiracy not counting Williams. Of these seven individuals, Williams provided drugs to five of seven. Therefore, Williams is considered a leader and four levels are appropriately added." PSR Paragraphs 54-55.

> It appears that the probation officer relied on irrelevant factors to determine that I should receive an enhancement under Section 3B1.1. For example, it appears that she relied on the fact that I sold drugs to five of seven individuals in the conspiracy. While this may show that I played an essential role in the conspiracy, the Sixth Circuit has explained that "merely playing an essential role in the offense is not equivalent to exercising . . . control over other participants," which is what is required to impose an enhancement under Section 381.1. *United States v. Wright,* 747 F.3d 399, 412 (6th Cir. 2014) (citation omitted). It also appears that the probation officer relied on the fact that I "controlled the flow of cocaine to others." However, any seller can be considered to "control the flow" of whatever product they are selling. This does not mean that every seller controls his CUSTOMERS. Also, cocaine is not a participant, but is merely property. A court cannot base an adjustment on the control of property alone. *See Christian,* 804 F.3d at 824; *United States v. Castilla-Lugo,* 699 F.3d 454, 460 (6th Cir. 2012). Furthermore, although the probation officer alleged that I "organized the conspiracy," she did not explain how exactly I did so.
>
> In conclusion, the manager/supervisor role enhancement was improperly applied, and my attorney provided me with constitutionally ineffective assistance of counsel at sentencing when he failed to object. An appropriate remedy would be to schedule a new sentencing hearing, at which my guidelines are re-calculated without the application of the enhancement.

(Motion, ECF No. 257, PageID 846, 855.[2])

# Analysis

**What Is at Issue in this Proceeding and What is Not**

---

[2] This lengthy portion of the Motion arguing lack of control and citing cases was actually prepared by another inmate who goes by the name "Spartacus." (Hrg. Tr. ECF No. 302, PageID 1534).

In his Motion, as quoted above, Williams argues at length that he is not substantively subject to an enhancement under U.S.S.G. Guideline 3B1.1. In particular, he argues that he did not exercise "control" as that term is understood in the case law (ECF No. 257, PageID 855).

Although the Motion was filed *pro se*, appointed counsel repeatedly adopts the same argument. Noting that the District Court adopted the pre-sentence report's statements of fact, counsel argues "[t]he facts contained in the initial and final pre-sentence reports at ¶ 55 are insufficient as a matter of law to support the enhancement (Defendant's Post Evidentiary Hearing Memorandum, (hereinafter "Def.'s Memo") ECF No. 303, PageID 1571). Defendant asks the Magistrate Judge to recommend that the District Court "re-sentence the Defendant **absent the enhancement.** The government by failing to argue before the district court or presenting evidence to this [Magistrate Judge] court to meet its burden of proof that the enhancement applied, has waived the application of the enhancement upon re-sentencing." *Id.* at PageID 1572. Defendant repeats this insufficient factual basis argument, "based on the factual misrepresentation of counsel that no disputed facts remained," *id.* at PageID 1576, and that "Defendant's unrebutted testimony at the evidentiary hearing demonstrates the §3B1.1 enhancement application to his case was error." *Id.* at PageID 1577. Finally, through counsel, Defendant argues that "[t]he facts 'adopted' by the court to support the enhancement are insufficient as a matter of law to apply the three point (sic) enhancement." *Id.* at PageID 1578.

Certainly, it is appropriate for counsel to argue, relative to the prejudice prong of *Strickland v. Washington,* 466 U.S. 668 (1984), that a trial court made an error which the trial attorney should have challenged. For that purpose, the argument that Williams is not subject to the enhancement as a matter of law is apt. However, Williams goes beyond that to ask the Magistrate Judge to

6

recommend that he be re-sentenced "absent the enhancement." Def,'s Memo, ECF No. 303, PageID 1572, 1583. But that relief is not available to Defendant in this proceeding. He did not plead that his sentence should be vacated because it was based on insufficient facts, but rather that it should be vacated because his attorney did not argue that there were insufficient facts.

Of course, the § 2255 Motion was filed *pro se* and such pleadings are entitled to liberal construction. *McNeil v. United States,* 508 U.S. 106, 113 (1993); *Estelle v. Gamble,* 429 U.S. 97, 106 (1976); *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972). On its face, the § 2255 Motion as quoted above can be fairly construed to argue that there was an insufficient factual basis for the enhancement. However, counsel, after appointment, never moved to amend the § 2255 Motion to make that assertion.

However, if counsel had moved to amend to add this claim, the Magistrate Judge would have denied the amendment. That is because the question whether there was a sufficient factual basis for the enhancement and whether Judge Dlott correctly adopted the findings in support of the enhancement is an issue that could have been raised on direct appeal because it is litigable on the basis of the appellate record. "It is well-established that a § 2255 Motion is not a substitute for a direct appea;[,]" and failure to raise on direct appeal an issue which can be litigated in that proceedings constitutes a default on the issue. *Ray v. United States*, 721 F.3d 758, 761(6th Cir. 2013), quoting *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003) citing *United States v. Frady*, 456 U.S. 152, 167-68 (1982). "[C]laims that could have been raised on direct appeal, but were not, will not be entertained via a motion under § 2255 unless the petitioner shows: (1) cause and actual prejudice to excuse his failure to raise the claims previously; or (2) that he is 'actually innocent[.]'." *Id*., citing *Bousley v. United States*, 523 U.S. 614, 622 (1998). Williams

7

has not offered proof of cause and prejudice to excuse his failure to raise this issue on appeal, not has he offered any evidence of "actual innocence."

Of course, Williams could not have effectively raised this claim on direct appeal because he had waived his right to appeal, with exceptions not relevant here (Plea Agreement, ECF No. 133, PageID 334). The Sixth Circuit upheld that waiver in the face of his claim that to do so would constitute a manifest injustice. *Williams,* 2017 U.S. App. LEXIS 20006 at *2. Williams did not waive his right to relief under § 2255 because of the preference of the federal courts that ineffective assistance of trial counsel claims be litigated in that way. *Massaro v. United States,* 538 U.S. 500 (2003); *Griffin v. United States,* 330 F.3d 733, 737 (6th Cir. 2006). But the ability to litigate ineffective assistance of trial counsel claims in § 2255 proceedings does not open a gateway to litigate the merits of underlying claims which have been forfeited by omission from direct appeal proceedings.

In sum, Williams is not entitled in this proceeding to a merits ruling on any factual insufficiency for enhancement claim. If the judgment is vacated and the case is set for resentencing, then Williams will then have an opportunity to present his arguments at that time, but the United States will also have an opportunity, which, contrary to Defendant's argument (Def's Memo., ECF No. 303, PageID 1572), they have not waived, to present evidence in support of the enhancement. The Magistrate Judge made an oral ruling to the same effect during the evidentiary hearing (Hrg. Tr., ECF No. 302, PageID 1458.)

**The Merits of Williams' Ineffective Assistance of Trial Counsel Claim**

The governing standard for ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687. In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice. *Berghuis v. Thompkins,* 560 U.S. 370, 389 (2010), *citing Knowles v. Mirzayance,* 556 U.S.111 (2009).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

9

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694. *See also Darden v. Wainwright*, 477 U.S. 168, 184 (1986), citing *Strickland, supra.*; *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998), citing *Strickland,* 466 U.S. at 687; *Blackburn v. Foltz*, 828 F.2d 1177, 1180 (6th Cir. 1987), quoting *Strickland,* 466 U.S. at 687. "The likelihood of a different result must be substantial, not just conceivable." *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011), *quoting Harrington v. Richter*, 562 U.S. 86, 111-12 (2011).

> In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. See *Wong v. Belmontes*, 558 U.S. 15, 27, 130 S. Ct. 383, 175 L. Ed. 2d 328 (2009) (per curiam); *Strickland*, 466 U.S., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674. Instead, *Strickland* asks whether it is "reasonably likely" the result would have been different. *Id*., at 696, 104 S. Ct. 2052, 80 L. Ed. 2d 674. This does not require a showing that counsel's actions "more likely than not altered the outcome," but the difference between *Strickland's* prejudice standard and a more-probable-than-not standard is slight and matters "only in the rarest case." *Id*., at 693, 697, 104 S. Ct. 2052, 80 L. Ed. 2d 674. The likelihood of a different result must be substantial, not just conceivable. *Id*., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674.

*Harrington r*, 562 U.S. at 111-112.

Counsel's performance is measured by "prevailing professional norms" at the time of the alleged errors. *Strickland,* 466 U.S. at 690; *Maryland v. Kulbicki*, 577 U.S. ___, 136 S. Ct. 2, 4; (per curiam); *Rickman v. Bell*, 131 F.3d 1150, 1154 (6th Cir. 1997) (internal quotation omitted). *Kulbicki* rejects retrospective perfectionism regarding lawyer's conduct and notes the difference between finding forensic material in 1995 and twenty years later in 2015. 136 S.Ct. at 4.

Consideration of counsel's performance in a § 2255 proceeding is *de novo*, unlike the review of such issues in a § 2254 proceeding where there will usually be a state court decision on the issue presumptively entitled to deference under 28 U.S.C. § 2254(d)(1) or (2). AEDPA deference does not apply to an ineffective assistance of trial counsel claim in a § 2255 proceeding.

"Both the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact." *Combs v. Coyle*, 205 F.3d 269, 278 (6th Cir. 2000); accord: *Ramonez v. Berghuis*, 490 F.3d 482, 487 (6th Cir. 2007);.

**The Performance Prong of *Strickland***

Williams's post-hearing argument provides a list of the things his defense attorney, Timothy McKenna, did not do. For instance, McKenna did not learn what access Williams had to legal materials at the Butler County Jail (Def.'s Memo, ECF No. 303, PageID 1565, citing Evidentiary Hearing Transcript ("Hrg. Tr."), ECF No. 302, PageID 1408.) McKenna could not recall, three years after the plea. any of the cases that he looked at in reference to enhancements prior to the plea. *Id.* at PageID 1567, citing Hrg. Tr. at PageID 1398. He could not recall what "role in the offense enhancement" he included in his guideline calculations pre-plea; nor could he produce a document showing those calculations. *Id.* at PageID 1567-68, citing Hrg. Tr. PageID 1399-1400.

Williams also presents McKenna's background in an unflattering light. Although he had been licensed for sixteen years, "he has never been a retained counsel in a criminal case in the United States District Court . . .[and] has always been a solo practitioner." (Def.'s Memo., ECF

No. 303, PageID 1566.) He used the "internet"[3] for research, but not "Lexis-Nexis, Westlaw[,] or the Casemaker function of the Ohio State Bar Association website[,]" despite being a member of the association. *Id.*, citing Hrg. Tr., ECF No. 302, PageID 1397. McKenna's "explanation of relevant conduct, which would have been a necessary precursor to a fully informed plea to a conspiracy charge, was woefully inadequate[,]" and "suggest[s] his general lack of experience in guideline knowledge and application." *Id.* at PageID 1567.

Yet Williams concedes McKenna " had dealt with [the federal sentencing guidelines] . . . a dozen or more times" and "had ample experience" as to "objections, federal pre-sentence reports, and the process by which he proceeded to sentence[.]" (Reply, ECF No. 305, PageID 1606). Moreover, while Williams's Memorandum details things McKenna **could** have done, it provides no authority for the proposition that these are things McKenna **should** have done. An attorney's performance under *Strickland* is measured against prevailing professional norms at the time. What did professional norms at the time dictate about the things Williams says McKenna did not do? Williams' briefing does not answer that question.

Once the plea was entered and an initial draft pre-sentence report prepared, McKenna shared that draft with Williams and captured in his letter to the probation officer "all of the objections" Williams had. (Def.'s Memo, ECF No. 303, PageID 1569, citing Hrg. Tr., ECF No. 302, PageID 1468, and Hrg. Ex. 24, McKenna's July 1, 2016, letter to Sarah Willison). The letter reflects Williams' objection to a 4-level enhancement for being an organizer or leader and argues for a "3 or even 2 level enhancement." It claims that Williams

> [D]id not control any of the coconspirators, and had no knowledge of their activities once he sold them drugs. Further he sold them small quantities at a time. He never did bulk sales. As said in

---

[3] Quotation marks in the original.

>  Application Note 4, Mr. Williams did not claim a larger share of the
>  fruits of the crime, and did not exercise control over anyone.

*Id.*, quoting Ex, 24. Despite claiming lack of control, McKenna did not argue there should be no § 3B1.1 enhancement at all.

Williams got what McKenna asked for in the letter, a reduction in the offense enhancement from four levels to three levels. In his Sentencing Memorandum, he acknowledged the three-level enhancement and its appropriate applicability (ECF No. 198, PageID 461-62). Instead of challenging the Guideline Range eventually recommended by the Probation Department, he argued for a downward departure from 108 months to 84 months. *Id.* at PageID 457.

McKenna was examined at the hearing about why he did not object to the final presentence investigation report:

> Q. We can agree that you never put the Government to their burden
> of proof on the enhancement because although you disagreed with a
> level-four enhancement, you agreed to a level-three enhancement to
> which the Government never objected by failing to further object
> once the enhancement was reduced from a four to a three and
> contained in the final presentence report, correct?
>
> * * *
>
> THE WITNESS: We didn't further object because we, meaning Mr.
> Williams and I, agreed we're happy with the reduction.

(Hrg. Tr., ECF No. 302, PageID 1426-27.)

> Q. What's the downside to preserving the objection that no
> enhancement should apply as it relates to the initial presentence
> report?
>
> A. Because then evidence, if the Government argued against us
> evidence would have come out that would have been not in his favor.
> We discussed the reduction to the three, from the four to the three

13

>which is significant. In terms of guideline impact, I believe it went from a 151 to a 135. He was happy with that, and I was, too.
>
>Q. So your testimony is that there could be evidence that came out by the Government when they were put to their burden of proof on proving the enhancement that your client may not have been a two?
>
>A. Absolutely. It might have been a four.
>
>Q. Well, you had the probation officer agreeing that it wasn't a four, and you had the Government not objecting to the reduction after being notified, correct?
>
>A. Correct.

*Id.* at PageID 1429.

>Q. Mr. McKenna, what was the downside in preserving an objection to any enhancement in putting the Government to their burden at the sentencing hearing?
>
>A. The downside is I discussed it with my client. We discussed the enhancements and the changes that were done and agreed that they were accurate, an accurate reflection of reality. So we didn't object further. We were also happy that they reduced it from a four to a three, and we were happy that this, in the first place he was looking at a possibility of life in prison, and we got it down significantly from that.

*Id.* at PageID 1431-32.

On re-direct examination, McKenna testified to his reasons for not pushing for a further reduction:

>A. Well, because, A, you want your client to be happy. B, you're trying to keep aggravating factors out of the sentencing. I don't want the, you know, if you push so hard on a position that is completely unreasonable, I know the prosecutor will then want to put somebody on [as] a witness to really hammer the Defendant. I discussed this three (sic) reduction with Mr. Williams, and he was very happy with

14

> that, and that's why we didn't go forward in court because I didn't want further aggravating factors in front of the judge.

*Id.* at PageID 1464.

> Q. So the reason you didn't do that, again, is what?
>
> A. Well, this was a bad case, and we had the plea facts, and the plea in as soft a language as possible to the benefit of my client because we wanted to get him as low a sentence as possible and to start contesting things that were not based in reality. I didn't want to do that. We didn't want to do that. Mr. Williams and I didn't want to do that because we didn't want you then putting on evidence of what actually occurred and at sentencing to be in front of Judge Dlott.

*Id.* at PageID 1466-67.

When the final presentence report was completed, Mr. McKenna sent it to Williams under cover of DX 25. On re-direct examination, McKenna testified Williams never objected to any of what was in that report. *Id.* at PageID 1476-77. Based on the facts, McKenna believed Williams could have been assessed a two-point enhancement, and a consequent upward adjustment, because his livelihood was derived from the conspiracy. *Id.* at PageID 1479.

Williams himself testified at the evidentiary hearing. Counsel began the examination by having Williams agree that he was "contesting the narrow issue of the ineffective assistance of counsel in Mr. McKenna's failure to object to the offense characteristics that you were a manager or supervisor . . . ." *Id.* at PageID 1493, 1494. Counsel then led Williams through a long set of denials of the facts on which the enhancement was based. *Id.* at PageID 1494-1503. Subsequently, counsel led Williams through a long list of denials regarding errors or omissions by McKenna and Williams's limited knowledge with respect to the law.[4] *Id.* at PageID 1503-17. Specifically, Williams testified that he did not see the letter sent by McKenna to Willison until the day before

---
[4] The questions directed to Williams were invariably leading, but Government counsel did not object.

the hearing (Def's Memo., ECF No. 303, PageID 1575, citing Hrg. Tr., ECF No. 302, PageID 1509-10).

Williams testified he was not happy with the one level reduction (Hrg. Tr., ECF No. 302, PageID 1519). He was not happy with his sentence and demanded an appeal "[b]ecause I felt my sentence wasn't a fair sentence." *Id.* at PageID 1520. Williams did not ask that the application of the enhancement be challenged on appeal because he only understood that possibility when he got to his present institution and another inmate began helping him prepare the 2255 Motion. *Id.* On cross-examination, Williams claimed that all of McKenna's testimony was incorrect. *Id.* at PageID 1523.

Having heard them both testify, the Magistrate Judge accepts McKenna's version of what happened between him and Williams in reaction to the presentence report--that is, that Williams was satisfied, indeed happy, with the negotiated reduction from a four-level enhancement to a three-level enhancement. They directly contradict one another on this point, but McKenna's testimony is better corroborated by the context. McKenna had successfully negotiated a plea agreement which substantially lowered Williams's likely sentence. Williams admits that McKenna's letter to Willison after the draft PSR captured his concerns and it argued for a reduction of one or two levels. Further, Williams testified that he and McKenna "reviewed the initial presentence report . . . in detail[.]" (Hrg. Tr., ECF No. 302, PageID 1510. The letter was written in July 2016, and the final PSR not released until October (Notice of PSI Transmittal to Judicial Officer, ECF No. 181, PageID 433), but Williams does not claim that he had any ongoing dispute with McKenna as to the PSR; nor does he claim that he asked McKenna to change the request in negotiations. Whether or not Judge Dlott directly addressed him at sentencing to ask if he had any objections, he did not in fact speak up to claim he should not be sentenced as a manager

(Sentencing Tr., ECF No. 245, PageID 680). After sentence was imposed – at the very bottom of the Guideline Range in the PSR – he did not seek to appeal on the ground that no managerial role was proven or provable. His only ground for appeal was his believe the sentence was unfair because he thought what he did was "worth" seven or eight years and he got nine. In fact, he admits that he did not come up with the idea that no enhancement was proper until he got a new legal adviser – Spartacus – in prison. As a matter of fact, the Court accepts McKenna's narrative.[5]

As a matter of law, Williams has not proved that McKenna performed deficiently. No authority is offered to the proposition that a lawyer must continue to argue for eliminating an enhancement when is client is "happy" with a one-level reduction, especially when, in the lawyer's professional judgment, the facts warrant (or the judge is likely to find they warrant) some role enhancement. There certainly is no proof that, with competent counsel, that anyone in Williams's position in the conspiracy could easily have proved role enhancement did not apply, especially in light of the other damaging information which the government could have adduced either in support of the enhancement or in support of other factors to increase the penalty (e.g., drugs stored at grandmother's house, derivation of livelihood from the conspiracy, etc.). Just as Williams admitted guilt in return for a reduction of the mandatory minimum from ten to five years, he decided to accept the three-level enhancement to avoid the risk that the government might adduce other evidence which would not ultimately benefit him if McKenna had not abandoned his objections raised in the PSR. Contrary to Williams's argument, McKenna's decision not to raise further objections was not a dereliction of his duties in light of *United States v. Bostic* (Def's Memo., ECF No. 303, PageID 1579-80, citing 371 F.3d 865, 872-73 (6th Cir. 2004)), but was

---

[5] As a matter of credibility generally, Williams admitted during the hearing that he had lied to the DEA when first arrested (Hrg. Tr., ECF No. 302, PageID 1531).

within the wide realm of reasonable decision-making under *Strickland*, and consequently, Williams cannot meet the deficient performance prong.

**The Prejudice Prong of *Strickland***

To prevail on the prejudice prong of *Strickland*, a defendant must show that there is a reasonable probability of a different result if a trial attorney had performed as defendant argues he or she should have performed. Williams's evidence on this prong is also not persuasive.

Williams argues at length that Judge Dlott's findings and the facts that underlie them are insufficient to support a role enhancement. But it is completely speculative whether the findings would have been the same if the three-level role enhancement had been contested. The United States adverted at the hearing to other evidence it would have produced in a contested hearing. The facts necessary to support a managerial finding are not like elements of a crime under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), required to be proven beyond a reasonable doubt. The demarcation between a three-level and a four-level enhancement is not clear, and the Court of Appeals reviews Guideline findings deferentially. *United States v. House*, 872 F.3d 748, 751 (6th Cir. 2017). Even if Williams had prevailed on that issue, it is far from clear or even reasonably probable he would have received a lower sentence.

**Conclusion**

Because Williams has not proven that his conviction is the result of ineffective assistance of trial counsel, his § 2255 Motion should be denied. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the

Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

June 25, 2019.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party=s objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140, 153-55 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).